**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TRADEMAVEN CLEARING, LLC<br>as subrogee for PENSION GHCO | § <br> § <br> § | |
| Plaintiff, | § <br> § <br> § <br> § | |
| v. | § <br> § | Case No.: 4:11-cv-351 |
| DONALD MICHAEL HOOD, | § <br> § <br> § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AND MOTION FOR MORE DEFINITE STATEMENT

Pending before the court are Defendant Donald Michael Hood's "Motion to Transfer Venue"

(Dkt. #8), Plaintiff's response thereto (Dkt. #10), and Defendant's reply (Dkt. #14). Also pending

before the court are Defendant's "Motion for More Definite Statement" (Dkt. #7), Plaintiff's

response thereto (Dkt. #11), and Defendant's reply (Dkt. #13). For the reasons set forth below, the

court is of the opinion that Defendant's motion to transfer venue (Dkt. #8) and motion for more

definite statement (Dkt. #7) should be **DENIED**.

### I. BACKGROUND

On or about April 27, 2010, Defendant Donald Michael Hood ("Hood") entered into a

Customer Agreement ("Agreement") with Penson GHCO ("Penson"), a futures commission

merchant, wherein Penson maintained for Hood an account in commodities, commodity futures

contracts, or options (collectively, "futures contracts").[1] Compl. 1, ¶ 7. In this agreement, Penson

---

[1] Very generally, commodity futures or futures contracts trading involves a contract for the sale
or purchase of a fixed quantity of a particular commodity at a set price for delivery at a future date. *See*

was the broker and Hood was the customer who owned a futures contracts account with Penson and traded commodities on that account.

Plaintiff Trademaven Clearing LLC ("Trademaven") is a non-clearing futures commission merchant.[2] *Id*. at ¶6. Around March 7, 2008, Trademaven entered into an Introducing Broker Agreement ("IBA")[3] with Penson to "facilitate commodity trades for customers introduced to Penson [] by Trademaven." *Id*. Importantly, the IBA provides that Trademaven is responsible for any losses sustained by its customers—such as Hood—and not covered by funds deposited by the customer into the account with Penson. Further, for those customers for whom Trademaven is responsible, any rights Penson would have to recover against losses are subrogated by Trademaven. *Id*.

On or about May 1, 2011, over a period of several hours, Hood traded a number of commodities through his futures account with Penson and, upon the completion of his transactions, lost approximately $1,455,400.00. *Id*. at 3, ¶8. Due to this large loss, Hood's account with Penson

---

*generally Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 357–59 (1982); *U.S. v. Dial*, 757 F.2d 163, 164–65 (7th Cir. 1985). A customer must contract with a futures commission merchant to trade in commodities and futures contracts because only futures commission merchants, and certain other classes of persons, can lawfully "solicit, accept any order for, or otherwise deal in any transaction in or in connection with security futures product[s]." 7 U.S.C. § 2(a)(1)(D)(i)(V). Due to the inherent risk of futures contracts and the future commitment to payment, a contract agreement with a customer requires the customer to deposit money or maintain a balance in his account that insures payment if the customer's trades result in losses. *See In re Futch*, No. 09-00144, 2011 WL 576071, *2 (Bankr. S.D. Miss. Feb. 04, 2011).

[2] A "clearing member" . . . "has clearing privileges such that it can process, clear and settle trades through a derivatives clearing organization on behalf of itself or others." 17 C.F. R. § 1.3(c). A non-clearing member does not enjoy these privileges. Thus, a non-clearing futures commission member conducts trades through a registered or "clearing" futures commission merchant.

[3] Generally, an "introducing broker" is a "firm that has the initial contact with the public customer but does not itself handle the mechanics of order entry, confirmation, clearance of trades, calculation of margin, or similar activities." *VanCook v. S.E.C.*, 653 F.3d 130, 133 (2d Cir. 2011) (internal quotation and citation omitted).

retained a deficit of $1,166,772.23. As of May 27, 2011, Hood had not deposited additional money

into the account to cover the loss, so Trademaven, exercising its subrogation rights, issued a written

demand to Plaintiff for payment on the amount due, plus interest and late charges. However, Hood

failed to pay on his account. Therefore, Trademaven initiated this suit on June 13, 2011, alleging that

Hood is liable for his open account and for breach of contract. *Id*. at 3, ¶10.

## II.  MOTION TO TRANSFER VENUE

In his motion to transfer venue, Defendant Hood argues that litigating this suit in the

Sherman Division is inconvenient for him, his defense counsel, and many witnesses in this case. *See*

Def.'s Mot. to Transfer 2. Therefore, Hood requests that the court transfer this case to the Tyler

Division of the Eastern District of Texas. *Id*.

## A. LEGAL STANDARD

A district court may transfer any civil action to any other district or division in which it might

have been brought for the convenience of the parties and witnesses, if such transfer is in the interest

of justice. 28 U.S.C. § 1404(a). The moving party bears the burden of demonstrating that a transfer

of venue is warranted for convenience purposes. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.

1966). The movant's burden is to show "good cause" for transfer. *In re Volkswagen of America,*

*Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (hereinafter, "*Volkswagen II*"). The Fifth Circuit explained:

> Th[e] good cause burden reflects the appropriate deference to which the plaintiff's
> choice of venue is entitled. When viewed in the context of § 1404(a), to show good
> cause means that a moving party, in order to support its claim for a transfer, must
> satisfy the statutory requirements and clearly demonstrate that a transfer is for the
> convenience of parties and witnesses, in the interest of justice. *Id*. (internal quotations
> omitted).
>
> The determination of venue transfer pursuant to section 1404(a) is within the district court's

sound discretion, exercised "in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988)). In so doing, the court must balance two categories of interest to resolve whether movant has carried his burden–private and public. *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (hereinafter, "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

## B. ANALYSIS

Here, the parties do not dispute that the action could have been filed in the Tyler Division. Accordingly, the court must review the private and public interest factors to determine whether transfer is "clearly more convenient" and "in the interest of justice." *See Volkswagen II*, 545 F.3d at 315. No single factor is dispositive. *Id*.

### 1. PRIVATE INTEREST FACTORS

#### a. The Relative Ease of Access to Sources of Proof

While advances in copying technology and information storage have rendered this factor far

less important in recent years, it is not superfluous. *See Volkswagen II*, 545 F.3d at 316. Defendant Hood argues that no sources of proof are located in the Sherman Division. Rather, all proof and evidence are found either in Tyler, Texas, where Hood resides, or in Chicago, Illinois, where Trademaven is headquartered. Def.'s Mot. to Transfer 5. Plaintiff, however, argues that there is no physical site to be examined, as the relevant transaction happened online, and any available evidence is documentary in nature.

Here, its seems that all the sources of proof will stem from online transactions and that the physical evidence will be documentary. Thus, the court is convinced that, with the use of information technology, any documentary evidence can be accessed easily in the Sherman Division. Nevertheless, the court recognizes that it is slightly less convenient for the Defendant to drive his documentary evidence from Tyler to Plano, Texas.[4] However, it is also slightly less convenient for the Plaintiff to drive or fly its documentary evidence from the Dallas-Fort Worth International Airport ("DFW Airport")—the airport Plaintiff anticipates to use—to Tyler rather than to Plano.[5] Accordingly, the court deems this factor as neutral.

**b.      The Availability of Compulsory Process**

The parties have not provided the court with information about where each party's witnesses reside, apart from information regarding the Defendant's residence in Tyler. Thus, it would be mere guesswork for the court to conclude that either Plano or the Tyler Division would be most convenient

---

[4] Though Defendant Hood refers to this court as having its situs in Sherman, Texas, this case will be heard in Plano, Texas, which is a place for holding court in the Sherman Division.

[5] The distance between DFW Airport and this courthouse in Plano is approximately 23 miles, while the distance from the DFW Airport to the Federal Courthouse in Tyler is approximately 118 miles. Thus, the additional travel distance is approximately 95 miles.

in this regard. Though Defendant's residence in Tyler is over 100 miles from the Plano courthouse, Defendant is a party to this suit and a motion to quash is unavailable to him. FED. R. CIV. P. 45(c)(3)(A)(ii). Further, due to the locations of the parties in both Texas and Illinois, some or all of the subpoenas issued to compel attendance by either forum—the Sherman Division or the Tyler Division—would be subject to motions to quash. *Id*. Accordingly, Defendant has not shown that the Tyler Division would have greater or absolute subpeona power for both depositions and trial in this case. *Cf. Volkswagen II*, 545 F.3d at 316 (noting the importance of the transferee court's absolute subpeona power). Therefore, this factor is also neutral.

### c.    Cost of Attendance of Willing Witnesses

This factor is the most important factor, though not dispositive, to the determination of whether a motion to transfer venue should be granted. *See Mini Melts, Inc. v. Uniworld Corp. WLL*, No. 4:07-cv-069, 2008 WL 4441979, *4 (E.D. Tex. Sept. 25, 2008). The party moving for transfer must "identify key witnesses and describe their expected testimony so that the court can properly evaluate its nature and quality" and can determine whether such witnesses are key to this litigation. *Id*. The Defendant, however, does not identify any key witnesses besides himself. Hood states that, upon his information and belief, all witnesses will travel from either Chicago or Tyler. Any witnesses from outside of Texas will likely fly into DFW Airport, offering daily nonstop flights to and from every part of the United States, including Chicago. Travel to Tyler for such witnesses would result in the inconvenience of an additional flight or additional driving distance of slightly under 100 miles.[6] On the other hand, the approximate driving distance from Tyler to this courthouse is 115 miles. However, the Defendant has not identified any witnesses besides himself who will be

---

[6] *See supra*, note 5.

traveling from Tyler. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) ("[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis.") (internal citation omitted). Accordingly, either forum would present inconveniences for willing witnesses. As a general rule, "a transfer should not be made where the only practical effect is to shift inconvenience from the moving party to the non-moving party." *Perritt v. Jenkins*, No. 4:11-cv-023, 2011 WL 3511468, *5 (E.D. Tex. July 18, 2011). *See also Cantrell v. City of Murphy*, No. 6:09-cv-225, 2010 WL 786591, at *4 (E.D. Tex. Mar. 1, 2010). Therefore, this factor is neutral.

### d.     All Other Practical Problems

Defendant argues that "all practicality points to the trial being easier, more expeditious, and less expensive if maintained in Tyler" where the Defendant and his records are located. Def.'s Mot. to Transfer 6; Def.'s Reply 3. The location of the parties and evidence have already been assessed above in the first three factors. However, Plaintiff points out that, as with any transfer, there would be an inherent resulting delay. Pl's Resp. 6. While it is true that some delay may be occasioned as the result of any venue transfer, the statute focuses on the "convenience" of parties and witnesses rather than delay. Delay could be considered by some courts under the first public interest factor. However, the court finds that this final private interest factor is neutral.

### 2.     PUBLIC INTEREST FACTORS

### a.     The Administrative Difficulties Flowing From Court Congestion

Generally, the undersigned judge does not base transfer decisions on the relative workloads of this court and proposed transferee courts. *See, e.g., Mini Melts, Inc.*, 2008 WL 4441979, *5.

**b.      The Local Interest in Having Localized Interests Decided at Home**

Defendant argues that there is no localized interest within the Sherman Division.  According to Plaintiff's complaint, this lawsuit arises directly out of acts allegedly committed by the Defendant.  Thus, Hood argues that this factor should weigh in favor of transfer because the only defendant in this case lives in Tyler, and any alleged acts that gave rise to this lawsuit would have occurred in Tyler.  Pl.'s Mot. to Transfer 7.  Plaintiff, on the other hand, argues that the Defendant has not identified any specific, localized interest of Tyler to this controversy, outside of the fact that it is Defendant's residence.  Here, the court finds that neither forum has a strong localized interest in this dispute.  The alleged transactions occurred online.  However, because Defendant's residence is in Tyler, the court concludes that this factor weighs slightly in favor of transfer to the Tyler Division.

**c.      The Familiarity of the Forum with the Governing Law & The Avoidance of Unnecessary Problems of Conflicts of Law**

Because both divisions are located in the Eastern District of Texas, these final two factors are neutral and not disputed by the parties.  *See Cantrell*, 2010 WL 786591 at *5.

Having considered all of the factors regarding Defendant's motion to transfer venue, the court determined that one factor weighs slightly in favor of transfer, with all other factors neutral.  However, Defendant has failed to satisfy his burden to show "good cause" for transfer because the facts do not illustrate that transfer to the Tyler Division is "clearly more convenient" in this case.  *Volkswagen II*, 545 F.3d at 315.  Although the Defendant resides in Tyler and the court finds that this factor lends some slight weight in favor of transfer, the movant has the burden to demonstrate that the Tyler Division is "clearly more convenient." The court finds that the Defendant has failed to meet his burden.  Accordingly, Defendant's motion to transfer venue (Dkt. #8) is **DENIED**.

### III. MOTION FOR MORE DEFINITE STATEMENT

Defendant Hood also requests that the court order the Plaintiff to re-plead its original complaint pursuant to Rule 12(e), Federal Rules of Civil Procedure. Defendant argues that the complaint is "vague, ambiguous, incomplete, and/or imprecise and does not provide Defendant Hood with sufficient information to know the true party in interest." Def.'s Mot. for More Def. Stmt. 1.

### A. LEGAL STANDARD

Rule 12(e) of the Federal Rules of Civil Procedure provides that a defendant may ask the court to require the plaintiff to amend its complaint with a more definitive statement if the plaintiff files a complaint that is "so vague or ambiguous that the [defendant] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). In so doing, the defendant must "point out the defects complained of and the details desired." *Id.* Generally, however, a pleading must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation and citation omitted). While specific facts are not necessary, the Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* However, a motion for more definite statement is inappropriate where the information sought can otherwise be obtained by discovery. *Mitchell v. E-Z Way Towers, Inc.*, 268 F.2d 126, 132 (5th Cir. 1959); *Widgery*, 2008 WL 822034 at *1 (internal quotation omitted).

### B. ANALYSIS

Here, the relief requested by the Defendant reads like a list of discovery requests. For example, Defendant requests information of the status of Trademaven's alleged involuntary dissolution, information regarding and a copy of the introducing broker agreement between Trademaven and Penson, precise identification of which trades were allegedly completed by the

Defendant, and a complete copy of the account agreement between the Defendant and Penson. *See Def.'s Mot. for More Def. Stmt.* 2–7. Such requests for clarification and fact seeking are better suited for discovery requests than a motion for more definite statement. *See Mitchell*, 268 F.2d at 132 ("[A] motion for more definite statement is *not* to be used to assist in getting facts in preparation for trial.") (emphasis in original). *See also Suarez v. Nueces County*, No. C-08-217, 2008 WL 4186904, *1–2 (S.D. Tex. Sep. 9, 2008). Defendant can obtain the requested information through discovery tools such as depositions, interrogatories, requests for production, or requests for admission. Accordingly, the court is of the opinion that the motion for a more definite statement should be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, Defendant's motion to transfer venue (Dkt. #8) is **DENIED**. Further, having considered Defendant's motion for more definite statement, the responsive pleadings, and applicable law, the court finds that the Plaintiff's complaint is sufficient and, therefore, **DENIES** the motion (Dkt. #7).

IT IS SO ORDERED.

**SIGNED this the 31st day of March, 2012.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE